# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 9, 2008

135232 & (14)

In re CONOR MICHAEL WILLIAMS,
          Minor.

SC: 135232
COA: 279573
Bay CC: 2006-009365-DL

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

_____/

On order of the Court, the motion to add issues is DENIED. The application for leave to appeal the September 28, 2007 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

CORRIGAN, J., dissents and states as follows:

I would grant the prosecutor's application for leave to appeal or remand to the Court of Appeals for consideration as on leave granted. MCR 3.932, which authorizes a court to transfer a case to the consent calendar without the approval of the prosecutor, may violate the separation of powers doctrine.[1] MCR 3.932 intrudes upon executive power belonging to the office of the prosecutor, as well as the Legislature's power to

---

[1] MCR 3.932(C) provides, in relevant part:

> If the court receives a petition, citation, or appearance ticket, and it appears that protective and supportive action by the court will serve the best interests of the juvenile and the public, the court may proceed on the consent calendar without authorizing a petition to be filed. No case may be placed on the consent calendar unless the juvenile and the parent, guardian, or legal custodian agree to have the case placed on the consent calendar. The court may transfer a case from the formal calendar to the consent calendar at any time before disposition.
>
> * * *
>
> (7)  Upon successful completion by the juvenile of the consent calendar case plan, the court shall close the case and may destroy all records of the proceeding. No report or abstract may be made to any other agency nor may the court require the juvenile to be fingerprinted for a case completed and closed on the consent calendar.

craft substantive law reflecting policy choices. Even in the absence of a separation of powers problem, however, the trial court abused its discretion in transferring the case to the consent calendar on the basis of its "philosophy" regarding sex offender registration requirements for juveniles, a philosophy that is 180 degrees opposite the legislative choice. MCL 28.724(5). I do not believe that the court's decision is within the range of "principled outcomes" when it directly contradicts the statutory language.

The prosecutor charged defendant with four counts of first-degree criminal sexual conduct (CSC I). The petition alleged that defendant, who was 13 years old, digitally penetrated his two younger half-sisters, who were 8 and 9 years old. He pleaded guilty in juvenile court to one count each of second-degree criminal sexual conduct (CSC II) and third-degree criminal sexual conduct (CSC III) in exchange for dismissal of the CSC I charges after being advised that he would have to register as a sex offender under the Sex Offenders Registration Act (SORA), MCL 28.724 *et seq.* for 25 years. It was later discovered that defendant would have to register for life under SORA.[2] The court contacted the prosecutor's office to ask whether it would amend the plea agreement to remove the lifetime-registration requirement. The prosecutor declined to do so. Failing to convince the prosecution to change its plea agreement, the trial court transferred the case to the consent calendar. The prosecution objected to the transfer. Nevertheless, the court proceeded to undo the plea and place the matter on the consent calendar.

The trial court's decision to transfer defendant to the consent calendar over the prosecutor's objection subverted the prosecutor's discretion to decide the terms of a plea agreement and to enforce the statutory requirements under SORA. The Court has addressed court interference with prosecutorial discretion on two occasions. In *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672 (1972) (*Genesee Prosecutor I*), the prosecutor challenged the trial court's ability, over the prosecutor's objection, to accept a plea to an offense that was not charged or to a lesser included offense. The defendant was bound over to the circuit court after a preliminary examination to stand trial on an information charging possession of a stolen motor vehicle in violation of MCL 257.254. *Id.* at 676. On the day of trial, the court granted defendant's motion to plead guilty of unlawfully driving away the automobile of another in violation of MCL 750.413, an offense that was not charged or a lesser included offense of MCL 257.254. *Id.* Before accepting the plea, the court asked the prosecutor whether he objected to the plea agreement. The prosecutor indicated he did object because the facts supported the charge as originally bound over and that charge was a more serious offense than the typical "joy riding" case covered by MCL 750.413. *Id.* The court overruled the prosecutor's objection. *Id.* During the plea taking procedure, after listening to defendant's recitation of his criminal actions, the court stated, "Actually, you are really guilty of the higher offense, but the court will accept your plea to the lesser offense." *Id* at 677.

---

[2] MCL 28.725(8)(b) requires lifetime registration for CSC II.

The prosecution sought a writ of superintending control from the Court of Appeals, challenging the trial court's ability to accept a plea, over the prosecutor's objection, to an offense not charged or to a lesser included offense. The Court of Appeals dismissed for lack of jurisdiction.[3] We granted leave, noting that "[w]hether the trial judge may amend an information and accept a plea *sua sponte* and over the objection of the prosecutor raises the question of constitutional separation of powers between the judicial and executive branch." *Id.* at 682. The Court explained that

> [t]he prosecutor is a constitutional officer whose duties are provided by law. The conduct of a prosecution on behalf of the people by the prosecutor is an executive act. . . . [T]he prosecutor is the chief law enforcement officer of the county and has the right to exercise broad discretion in determining under which of two applicable statutes a prosecution will be instituted. [*Id.* at 683 (citations omitted).]

A judge may not act as prosecutor, judge and jury. *Id.* "For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers. *Id.* at 684. Concluding its opinion, the Court noted that "[i]n . . . holding that the judge here acted without authority we express no opinion on the propriety of accepting a plea over the objection of the prosecutor where both offenses are charged by the prosecutor, nor do we express an opinion on the propriety of accepting a plea over the objection of the prosecutor to an offense which *is* a lesser included offense." *Id.* at 684-685 (emphasis in original).

The Court had the opportunity to address those issues not reached in *Genesee Prosecutor I* in *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115 (1974) (*Genesee Prosecutor II*). Specifically, the case addressed whether the court, over the prosecutor's objection, may accept a plea of guilty to one count of a multi-count information and whether, over objection, the court may accept a plea of guilty to a lesser included offense. In *Genesee Prosecutor II*, an information was filed charging that defendant did "kill and murder" another person. Over the prosecutor's objection, the court accepted the defendant's plea of guilty of the offense of manslaughter. *Id.* at 118.

In granting the prosecution's complaint for superintending control, this Court held that:

> A circuit judge does not enjoy supervisory power over a prosecuting attorney. He may reverse a magistrate's decision only for abuse of

---

[3] This Court held that the Court of Appeals had jurisdiction to entertain the complaint for superintending control for the purpose of determining whether the trial judge acted without jurisdiction or in excess of jurisdiction. *Id.* at 682.

discretion. He may not properly substitute his judgment for that of the magistrate or prosecuting attorney as if he were reviewing the magistrate's decision *de novo* or acting in a supervisory capacity with respect to the prosecuting attorney. He may reverse or revise their decisions only if it appears on the record that they have abused the power confided in them. [*Id.* at 121.]

Because testimony tended to show that the defendant shot the victim once while the victim was standing and a second time five seconds after he had fallen to the ground, this Court held that the prosecutor did not exceed his power in refusing to authorize a plea of guilty of manslaughter. *Id.* at 122. The Court set aside the defendant's plea and the sentence imposed. *Id.* at 123. It remanded for trial on the information charging him with the offense of manslaughter and murder. *Id.*

The present case involves virtually the same problem presented in *Genesee Prosecutor I* and *Genesee Prosecutor II*–interference with prosecutorial discretion, in violation of the separation of powers doctrine. MCR 3.932 encourages unconstitutional interference by judges with the executive powers of prosecutors because it allows a trial court to transfer a case to the consent calendar even when a prosecutor objects to the transfer. MCR 3.932(C) only provides that "[n]o case may be placed on the consent calendar *unless the juvenile and the parent, guardian, or legal custodian agree* to have the case placed on the consent calendar." (Emphasis added.) The court rule has no regard for the charging official's executive decision. In this case, the trial judge disregarded the prosecution's objection to placing defendant's case on the calendar. This judicial action, even if allowed under the court rules, improperly encroached on the executive power vested in the prosecution.

MCR 3.932(C) may well also violate the separation of powers between the judicial and legislative branches as applied in this case. In *McDougall v Schanz*, 461 Mich 15 (1999), the Court addressed whether MCL 600.2169 (qualifications for expert witnesses in medical malpractice claims) impermissibly infringed on the Court's rule-making authority to promulgate court rules on practice and procedure. The Court determined that the Legislature intended that § 2169 would often compel different qualification determinations than MRE 702. *Id.* at 25. Because § 2169 and MRE 702 clearly conflicted, the Court had to determine whether the statute impermissibly infringed on the court's constitutional authority to enact rules governing practice and procedure. *Id.* at 26. The Court concluded that § 2169 was *substantive* law, and thus it did not impermissibly infringe on the court's constitutional rule-making authority. *Id.* at 37.

In so holding, the Court noted that "[i]t is beyond question that the authority to determine rules of practice and procedure rests exclusively with this Court. Indeed, this Court's primacy in such matters is established in our 1963 Constitution." *Id.* at 26. At the same time, the Court is not authorized to enact court rules that "establish, abrogate, or

modify the substantive law." *Id.* at 27. Therefore, if a court rule contravenes a legislatively declared principle of public policy, the court rule should yield. *Id.* at 31.

On its face, MCR 3.932 does not necessarily contravene a legislatively declared principle of public policy. Nevertheless, in its application, as demonstrated by the present case, it can impermissibly invade the providence of the Legislature. In MCL 28.721a, the Legislature made a very clear statement regarding the policy considerations undergirding the requirements of SORA:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

In order to implement this stated policy, the Legislature enacted MCL 28.725(7)(b), which requires lifetime registration for CSC II. MCL 28.724(5) expressly applies the registration requirements to juveniles. Transfer to the consent calendar, however, allows defendant to avoid SORA requirements by removing him from the adjudicative process. This thwarts the Legislature's clear policy that it is in the public's best interest to require all sex offenders to register.

The trial court's decision to transfer defendant's case to the consent calendar also circumvents the Legislature's policy decisions expressed in the Juvenile Diversion Act, MCL 722.821 *et seq.* The act allows for the removal of certain types of cases from the adjudicative process, *but specifically provides that CSC I, II and III cases may not be diverted.*[4] Placement on the consent calendar similarly removes a defendant from the adjudicative process, but the consent-calendar rule contains no restriction on the types of cases to which it might apply. Regardless of whether a defendant commits CSC I, II, or III, a defendant who successfully completes his consent calendar plan will avoid conviction and therefore avoid mandatory registration by SORA. The consent calendar

---

[4] MCL 722.823(3) provides that "[a] minor accused or charged with an assaultive offense shall not be diverted. An assaultive offense is defined as, among other things, an offense against a person described in MCL 750.520b (CSC I), MCL 750.520c (CSC II), or MCL 750.520d (CSC III).

is, in effect, diversion under a different name. The Juvenile Diversion Act, however, reflects a clear legislative policy that sex offenders, regardless of age, may not avoid the adjudicative process. The consent-calendar rule circumvents this legislative policy choice.

By allowing the trial court to transfer a case to the consent calendar and avoid the limits of the Juvenile Diversion Act and the requirements of SORA, the court rule invites abrogation of the stated public policy of protecting the public from convicted sex offenders where the executive charged with the prosecution decision concludes such regulation is essential. The Court's rule-making authority, however, is limited to rules of practice and procedure. When the rules we have crafted invade the province of the prosecutor's executive power or the Legislature's power to enact legislation reflecting policy considerations, our court rules must yield to the powers exercised by the other branches of government.

Even if MCR 3.932 does not implicate separation-of-powers problems, the trial court abused its discretion in transferring defendant to the consent calendar on the basis of its personal "philosophy" rather than the standards set forth in the rule. The trial court explained its reasons for undoing the plea and placing the matter on the consent calendar:

> The court feels, this is my philosophy, that that kind of—a punishment for a young man who did some very horrible things, at the age of 12 and 13, could be cruel and unusual punishment. It's very—it not only restricts him, it restricts college, it restricts jobs, it restricts his ability to live in neighborhoods, it restricts his ability to ever go on school property— ever. So if he were to marry and have children, he can't go to his children's school activities because sex offenders are not allowed on school property. They're not allowed on some church properties. They're not allowed in certain neighborhoods.
>
> * * *
>
> . . . I'm not convinced, at this point, that someone who did an offense when he was 12 or barely 13, require—requires lifetime registry on the sex offender internet.
>
> * * *
>
> So for those reasons, I felt that it was improper or inappropriate to have this young man pre-judged to be a lifetime member of the sex offender registry when we don't know yet whether or not he will make progress.

In further justifying its decision to transfer defendant to the consent calendar, the trial court made several troubling observations. It noted that "[t]his offense was a family matter that happened within your family while he was in your supervision. Um, he—as far as I know, he hasn't preyed on little girls on buses or anything like that." The court did not explain how an offense inside the home by a victim's family member ameliorates the severity of the offense. Instead, the trial court explained:

> [T]he doctor who evaluated him talked about a sex addiction, that it's a budding sex addiction. Those things are treatable. This court has dealt with dozens, if not scores, of young men sex offenders. And we have seen many of them, not all, but we have seen very many of them rehabilitate through intensive counseling and therapy, so that they know what the triggers are, they know how to avoid it, they do a recycle plan to show that they know how to avoid those kind of thoughts that lead them to inappropriate behaviors. They learn appropriate versus inappropriate sexual behaviors. And it is something that's treatable. And so we are going to make sure that [defendant] gets that kind of treatment.

* * *

> But because of the, what I consider to be the draconian requirements of the sex offender registry for young children, and you know, I'm talking about a boy who was 12 and 13 when he committed these acts, um to make that a part of his sentence, and make it something that is um, quite likely, going to be unable to be changed in the future. Um, it just seems to me to be not giving him a chance to rehabilitate. And I—I want to give him the hope that—that he will—you know, that he may not have to register if he does successfully complete this.

The trial court acted outside the range of principled outcomes in focusing solely on the damage defendant would suffer if forced to register as a sex offender, rather than on harm to the public. The trial court's philosophical disagreement with public policy, specifically, the appropriateness of applying SORA to juveniles, cannot supersede the plain language of the court rule. MCR 3.932(C) only allows a trial court to transfer a case to the consent calendar if such an action "will serve the best interests of the juvenile *and the public*." (Emphasis added.) The Legislature has unequivocally expressed that it is in the best interest of the public to require *all* sex offenders to register, notwithstanding treatment or any other potential for rehabilitation. SORA contains no treatment or rehabilitation exceptions to the registration requirements.

Because I believe that the consent calendar violates separation-of-powers principles, and because the trial court abused its discretion in placing defendant on the consent calendar, I would grant the prosecution's application for leave to appeal or remand this case to the Court of Appeals for consideration as on leave granted.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 9, 2008

Clerk

d0506